[No. A055057. First Dist., Div. Five. Apr. 21, 1992.]

In re the Marriage of CYNDI and JAMES PATRICK ABERNETHY.
CYNDI ABERNETHY FREITAS, Appellant, v.
JAMES PATRICK ABERNETHY, Respondent.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Josanna Berkow, Deputy Attorneys General, for Appellant.

Valerie Pistole for Respondent.

**OPINION**

KING, J.—In this case we hold that the conflict of interest standard enunciated in Penal Code section 1424 applies to a motion to disqualify a district attorney from performing any authorized duty, including participation in civil proceedings for the modification of child support orders.

The County of Napa (County) apeals from an order disqualifying its entire district attorney's office from representing Cyndi Abernethy (Freitas) in a review of a stipulated child support order, contending the trial court erred by rejecting the conflict of interest standard enunciated in Penal Code section 1424.

Cyndi and James Patrick Abernethy were married on November 25, 1974, and had one child, James Douglas, born May 17, 1976. A petition for

dissolution of the marriage and child support was filed and a default judgment entered against James on April 20, 1983.

On December 3, 1990, the Napa County District Attorney's Office, Family Support Division, filed an order to show cause re modification.[1] The parties agreed to a stipulation, which the court approved and entered as its judgment and order on January 18, 1991. The court calendared the matter for July 15, 1991, for further review of the amount of child support and disposition of the dependency tax exemption.

Lee B. Philipson, who represented James on the stipulation, withdrew as his attorney of record by formal notice filed January 24, 1991. Prior to the July 15, 1991, review, Philipson accepted a position in the criminal division of the district attorney's office.[2] James's new attorney applied for an order disqualifying the Napa County District Attorney, Family Support Division, from representing Cyndi. In an attached declaration, James stated he had not given his written consent to the district attorney's involvement inimical to his interests. After hearing arguments from both parties, the trial court granted the recusal motion as to the entire district attorney's office.

## I

 James contends this appeal is moot because after the trial court filed its recusal order, the child began living with him. It is well settled that an appellate court will decide only actual controversies. Accordingly, an action originally based upon a justiciable controversy cannot be maintained on appeal if questions raised therein have become moot by subsequent events. (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581].) However, nothing in the record reflects the changes asserted by James. Bare assertions do not provide a basis for us to order dismissal of an appeal. (See *George* v. *Burdusis* (1942) 21 Cal.2d 153, 163 [130 P.2d 399].)

Even if we assume the truth of the facts set forth by James, the County's appeal presents an "actual controversy." The default order awarded physical custody of the child to Cyndi. Until modified pursuant to law, the legal effect

---

[1] The Napa County District Attorney's Office became involved in this case under the authority of Welfare and Institutions Code section 11475.1 which allows the district attorney to take "appropriate action," including motions for modification, to ensure children receive adequate support. The district attorney's duty extends to children whose families do not receive public assistance. (Welf. & Inst. Code, § 11475.1, subds. (a), (f)(3).)

[2] The Family Support Division and the Criminal Division of the Napa County District Attorney's Office are located in separate buildings and possess independent chains of authority and computer systems. Moreover, Philipson stated that his duties with the criminal division, involving felony intake and preliminary hearings, had no connection with the family support division.

of the prior custody award will continue to entitle Cyndi to support payments from James. (See Civ. Code, § 5161.) Moreover, the prospect of future modification proceedings, in which the district attorney may be requested to participate, exists until the child reaches the age of majority. Resolution of an issue before the court "is particularly appropriate when it is likely to affect the future rights of the parties before us." (*Evans Products Co.* v. *Millmen's Union No. 550* (1984) 159 Cal.App.3d 815, 820, fn. 5 [205 Cal.Rptr. 731].)

We may exercise our discretion to resolve an issue of continuing public interest which is likely to recur in other cases, even if the issue may be considered technically moot. (*John A.* v. *San Bernardino Unified School Dist.* (1982) 33 Cal.3d 301, 307 [187 Cal.Rptr. 472, 654 P.2d 242].) Clarification of the scope of Penal Code section 1424 benefits both bench and bar.

## II

The trial court found Penal Code section 1424, which provides that "[t]he motion [to disqualify a district attorney] shall not be granted unless . . . a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial," did not apply outside criminal proceedings. ▬█ The trial court further concluded the civil conflict of interest standard had been satisfied by James's showing of "impropriety, or appearance of such to the public."[3] The County contends Penal Code section 1424 does apply to civil child support actions and therefore precludes recusal in this case.[4]

---

[3]Under the civil standard, counsel are subject to disqualification when they accept a case against a former client which may involve reference to confidential information obtained under the former representation that is material to the new representation, unless the former client gives written consent. (Rules Prof. Conduct of State Bar, rule 3-310(D).) The test has been stated in terms of " 'whether the former representation is 'substantially related' to the current representation. . . .' " (*Western Continental Operating Co.* v. *Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 759 [261 Cal.Rptr. 100].) It is the possibility of the breach of confidence, not the fact of an actual breach that triggers disqualification. (*Ibid.*)

[4]The County incorrectly argues that since rule 3-310(D) of the Rules of Professional Conduct can only be applied to an actual attorney-client relationship, *Monterey County* v. *Cornejo* (1991) 53 Cal.3d 1271, 1284 [283 Cal.Rptr. 405, 812 P.2d 586], precludes application of the civil conflict of interest standard in this case. In *Cornejo*, the court held "[n]otwithstanding the collateral benefit to the custodial parent, the 'client' in [child support] actions remains the county." (*Ibid.*; see Welf. & Inst. Code, § 11350.1.) Thus, no potential conflict of interest could exist "where custody of the minor child changes and the district attorney is compelled to seek support from the parent whom it earlier 'represented.' " (*Ibid.*) This case is factually distinguishable from *Cornejo*, however, in that the conflict arises with respect to James, whose private counsel on the stipulation agreement subsequently went to work for a

██ Interpretation and applicability of a statute is a question of law to be determined de novo by this court. (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].) ██ A statute should be interpreted so as to effectuate its apparent purpose. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) " 'It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. . . .' " (*Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996].)

Penal Code section 1424 authorizes a motion to disqualify a district attorney "from performing *any authorized duty* . . . ." (Italics added.) No limitation appears other than that the duty must be one the district attorney is authorized to perform. However, other language in that section provides: "The motion shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it *unlikely that the defendant would receive a fair trial.*" (Italics added.) This language arguably indicates the section may be restricted to criminal prosecutions (*In re Marriage of Dade* (1991) 230 Cal.App.3d 621, 626 [281 Cal.Rptr. 609]), or at least to actions involving a defendant and a potential trial.

Penal Code section 1424 is therefore facially susceptible to two different interpretations. In light of this ambiguity, the legislative history of the statute may be considered to help discern the intent of the Legislature. (See *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *People* v. *Norris* (1985) 40 Cal.3d 51, 54 [219 Cal.Rptr. 7, 706 P.2d 1141].) The history of Penal Code section 1424 reveals the statute was intended to cover child support proceedings.

As originally enacted in 1980, the first sentence of Penal Code section 1424 provided: "Notice of any motion to disqualify a district attorney from *prosecuting a criminal case* shall be served . . . ." (Stats. 1980, ch. 780, § 1, p. 2373, italics added.) The language providing for recusal from "any authorized duty" was inserted by amendment in 1985. (Stats. 1985, ch. 724, § 1, p. 2371.) The legislative reports accompanying the amendment state: "The sponsor of the bill, the Attorney General, indicates that appellate interpretation of the recusal statute limits the recusal motions to criminal proceedings, thereby excluding juvenile, habeas corpus, *child support* and other matters which are not technically 'criminal'. *This bill would expand*

---

party adverse to his interests. Moreover, *Cornejo* did not address what standard should be applied to determine disqualification once a conflict has been identified.

*statutory provisions to include non-criminal proceedings normally litigated by the district attorney.*" (Sen. Rules Com. Rep., 3d reading analysis of Assem. Bill No. 734 (1985-1986 Reg. Sess.) Aug. 19, 1985, italics added. Accord, Sen. Com. on Judiciary, Analysis of Assem. Bill. No. 734 (1985-1986 Reg. Sess.); Assem. Com. on Public Safety, Analysis of Assem. Bill No. 734 (1985-1986 Reg. Sess.) May 13, 1985.) ■ Thus, the legislative reports expressly indicate the 1985 amendment was intended to expand the reach of the statute to cover noncriminal child support actions. Moreover, the express reference to habeas corpus actions indicates a "trial" need not be contemplated between the parties to the dispute.

James raises two arguments against this conclusion.[5] First, he claims the 1985 amendment was intended only to permit disqualification in noncriminal cases, not to make substantive changes in the proof of conflict requirements. The legislative reports provide, "The provisions of this bill do not make any substantive changes in the notice requirements or the proof of conflict requirements." (Sen. Com. on Judiciary, Analysis of Assem. Bill. No. 734 (1985-1986 Reg. Sess.); Assem. Com. on Public Safety, Analysis of Assem. Bill No. 734 (1985-1986 Reg. Sess.) May 13, 1985.) This indicates only that the amendment would not substantively change the conflict of interest standard under Penal Code section 1424 as then written.

Second, James maintains the policy considerations underlying the stringent recusal standard in Penal Code section 1424 apply only in the criminal context where there is no alternative to the district attorney's prosecuting the crime. However, in 1985, when section 1424 was amended, "child support" actions by the district attorney had long encompassed civil actions. Welfare and Institutions Code section 11475.1, passed in 1975, provided that "[t]he district attorney shall take appropriate action, both civil and criminal, to enforce this obligation . . . when requested to do so . . . when the child is not receiving public assistance." (Stats. 1975, ch. 924, § 10, p. 2035.) It is of no weight that only after the amendment to Penal Code section 1424 was the district attorney expressly authorized to bring modification actions. (See Stats. 1989, ch. 1359, p. 4973.) In either a civil enforcement or modification action the individual may retain private counsel.

---

[5]James makes a third argument by grasping at an error made by the Senate Judiciary Committee. The committee stated: "Existing law provides that a district attorney may be disqualified from participating in the investigation or prosecution of a *criminal* case because of an actual conflict of interest or simply an appearance of impropriety." (Italics in original.) However, Penal Code section 1424 has always referred to whether it is "likely the defendant will receive a fair trial." Nor has "appearance of impropriety" ever been considered a relevant inquiry in cases interpreting section 1424. (See *People v. Conner* (1983) 34 Cal.3d 141, 148 [193 Cal.Rptr. 148, 666 P.2d 5]; *People v. McPartland* (1988) 198 Cal.App.3d 569, 574 [243 Cal.Rptr. 752].)

The judgment is reversed and remanded for further proceedings in accordance with this opinion. The County shall recover its costs on appeal.

Haning, Acting P. J., and Rouse, J.,* concurred.

*Retired Associate Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.